[No. 8052]

## GIBSON v. WOODS.

1. QUIT-CLAIM DEED—*Effect of Acceptance.* One claiming under a void tax deed but not in possession of the land, does not, by accepting the quit-claim deed of the original proprietor, become liable under the covenants of such proprietor, nor part with his right to the redemption money prescribed by statute. (548, 549)

2. VOID TAX TITLE—*Right to Redemption Money.* Where one while under no obligation or duty to the mortgagee to pay the taxes acquires a tax title, the mere taking afterwards of a quit-claim deed to the land from the mortgagor does not destroy or defeat the tax title, or, should it be declared void, the right to the redemption money. (549)

Syllabus by GARRIGUES, J.

*Error to Conejos District Court.*—Hon. CHARLES C. HOLBROOK, Judge.

This suit to quiet title, concerns a tract of land in Conejos county, for which a patent was issued in 1888 to one Flemming, and from whom it passed by mesne conveyances to Harriet E. Chapman. In 1889 she executed a trust deed on the property containing the following clause:

"And that she will not at any time hereafter, until the said principal sum and the interest thereon shall have been fully paid suffer said premises, or any part thereof, to be sold for any tax or assessment whatsoever, nor will she do, or permit to be done to, in, upon or about said premises, anything that may in anywise tend to impair the value thereof, or to diminish the security intended to be effected by virtue of said instrument."

In 1899 the land was sold to the county for the taxes of 1897, and November 16, 1901, the tax sale certificate was purchased by and assigned to Jesse Ruby, who paid

the taxes for 1898, 1899 and 1900, endorsed thereon, February 17, 1902, Ruby took a treasurer's deed on the certificate and August 7, 1903, conveyed to William S. Woods, defendant in error, whatever right he had acquired. June 17, 1897, the land was sold to the county for the taxes of 1895 and in 1901 the tax sale certificate was assigned to Ruby who in 1907 assigned it to Woods, and November 25, 1907, Woods took a treasurer's deed on the certificate.

In 1898 the land was sold for the taxes of 1896 and in 1901 this tax sale certificate was assigned to Ruby, who in 1907 assigned it to Woods, and November 25, 1907, Woods took a tax deed on this certificate.

In 1903 the land was sold to the county for the taxes of 1901 and June 25, 1903, this tax sale certificate was assigned to Ruby who March 24, 1904, assigned it to Woods, and in 1907 Woods took a tax deed on this certificate.

July 22, 1904, Woods took a quit claim deed to the land from Harriet E. Chapman.

In 1908 the trust deed given by Chapman was foreclosed, and November 28, 1908 a trustee's deed given to Charles E. Gibson, plaintiff in error.

In 1911, Gibson brought this action under the code to quiet title, alleging he was in possession of the land; that Woods claimed some adverse right therein, and asked that he be required to set forth the nature and character of the right. Woods' answer admitted that he claimed to own the land in fee simple, and set forth the nature and character of his right as being grounded upon the tax title he had taken in 1902 from Ruby; that in 1899 the land was sold for the taxes of 1897, and in 1902, a tax deed was issued to Ruby who also paid three years taxes endorsed upon the certificate, and in August, 1903, Ruby conveyed whatever right he had, to Woods,

who had since paid the taxes; also that he held tax deeds on the land for the taxes of 1895, 1896 and 1901.

On the trial plaintiff introduced in evidence the U. S. patent to Flemming, the Mesne conveyances to Chapman, the deed of trust given by Chapman in 1889 and the trustee's deed to Gibson in 1908, and rested. Defendant then offered the 1902 tax deed to Ruby and the other tax deed, and it was stipulated that whatever right Ruby acquired became vested in Woods by a deed, on August 7, 1903. On objection being interposed to their introduction, the court excluded all the tax deeds, for the reason that they were void upon their face. Woods then claimed to own the right to redemption and reimbursement, and the parties stipulated in open court that upon the question of the ownership of the right to redemption, and to the redemption value of the tax sale certificates, and other taxes, that Woods and his grantor Ruby had paid the taxes by tax sales, tax deeds and other payments for the years '95, '96, '97, '98, '99, '00, '01, '02, '03, '04, '05, '06, '09 and '10, and if the court should find Woods owned the right to redemption, and was entitled to be reimbursed, that the attorneys would procure from the county treasurer a compilation of the amount of such payments, interest and penalties, which should be inserted in the decree as a finding of fact in open court upon proof. Defendant then rested, and plaintiff, to defeat Woods' claim to the ownership to the right to redemption, offered in rebuttal a quit claim deed of date July 22, 1904, heretofore mentioned, from Harriet E. Chapman to William E. Woods.

February 1, 1913, the court in its final decree, pronounced the tax deeds void, and found that Gibson was the owner and in possession of the land; that Woods had no title, but did own the right to redemption, which was of the value of $939.58, and which Gibson was adjudged

to pay into court to reimburse Woods. Gibson brings
the case here for review.

Mr. JOHN F. MAIL, for plaintiff in error.

Mr. JESSE STEPHENSON, for defendant in error.

GARRIGUES, J. (after stating the facts as above.)

1. At the tax sale of 1899, the county bid in the
land for the taxes of 1897; Ruby bought the tax certi-
ficate in 1901, paid the taxes of 1898, 1899 and 1900 en-
dorsed thereon, took a tax deed in February, 1902, and
August 7, 1903, conveyed the land to Woods.

The property was sold to the county in 1897, 1898
and 1903 for the taxes of 1895, 1896 and 1901, and these
certificates were bought by Ruby and assigned to Woods
who took tax deeds thereon. July 22, 1904, Chapman
quit-claimed to Woods. The Chapman trust deed of 1889
was foreclosed in 1908, and Gibson took a trustee's deed.

There is no dispute regarding the invalidity of the
tax deeds or the amount required to redeem, in case
Woods still retains the right to redemption. The only
question is over Woods' right to reimbursement. He
claims he still owns the right to redemption and should
be reimbursed. Plaintiff in error takes issue with this
position, and contends that Woods became the successor
in title to Chapman, whose duty it was as mortgagor
to pay these taxes, and that on account of taking the
quit-claim deed, he is entitled to no reimbursement what-
ever; that the duty of Chapman to keep the title clear of
taxes, descended and became imposed upon Woods as
her successor; that by reason of taking this deed, it be-
came Woods' duty, as it was Chapman's, to clear the
title from tax liens, and that he can own no right to re-
demption from tax sales, the lien of which the law im-

posed upon him the duty of discharging; that although he had in 1903 acquired the right from Ruby, he lost it when he took the quit-claim deed, the mere taking of which was in effect a legal redemption from the tax sales.

With this contention we cannot agree. The taxes of 1897 were a prior lien to the trust deed of 1889. The county bid in the land for these taxes at the tax sale of 1899 and by purchasing the tax sale certificate from the county in 1901 and paying the taxes endorsed thereon, Ruby acquired from the county the right to redemption which was a prior right or lien to the trust deed, and in 1902 took a treasurer's tax deed. If valid, Ruby derived a new title free from the lien of the trust deed, and paramount to any title based thereon; if void, while he acquired no title, he still retained and owned the vested right to redemption and reimbursement. Woods in 1903 became the owner of a vested right theretofore acquired from the county by Ruby. If the tax sale was valid, he had a perfect title, acquired by operation of law, free from all liens; if it was void, he still owned and held the right to redemption and reimbursement. The court pronounced the tax deeds void and held that Woods still owned the right to redemption and should be reimbursed. Gibson now contends that the mere taking of a quit-claim deed in 1904 from Chapman the mortgagor, whose duty it was to pay the taxes, divested Woods of this prior right to redemption acquired from Ruby in 1903 and had the effect of transforming Woods' right of redemption into a payment of taxes or a redemption from the tax sales, thus clearing the title from the tax liens; that neither the mortgagor, nor any one whose duty it was to pay the taxes, could defeat the mortgage by permitting the taxes to be delinquent and acquiring the tax title; that no right can be acquired by neglecting such duty to the mortgagee; that the purchase of land at a tax sale by a mortgagor or his successor, whose duty it is

to pay the taxes, is regarded in the light of a payment of the taxes. With this pronouncement of the law, we have no contention, but that rule is not applicable here. Neither Ruby nor Woods, when they obtained the alleged tax title, was a mortgagor, nor claimed under a mortgagor, nor was any duty resting upon either of them to pay the taxes, nor did they neglect to discharge any duty which either owed the mortgagee. The right to redemption which vested in Ruby, was transferred to Woods before the latter took the quit-claim deed, in which there was nothing obligating him to pay the indebtedness secured by the trust deed to redeem the property from the tax sales, or to pay any taxes. He was not in possession claiming under or as the successor to the mortgagor, and when he acquired the right he owed no duty to the mortgagee to pay any liens which had accrued on the property. His tax title, or the right to redemption should this title prove to be void, was acquired by operation of law from a wholly independent source, and cast none of the above obligations upon him. The mere taking of a quit-claim deed from the mortgagor afterwards, did not operate to deprive him of any right theretofore acquired. Taking a quit-claim deed under such circumstances, did not alter, change, transform or in some mysterious manner convert his right to redemption and reimbursement into a redemption.

Where one who is under no obligation or duty to the mortgagee to pay the taxes, acquires a tax title, and afterwards takes a quit-claim deed from the mortgagor, it does not destroy nor defeat the tax title or the right to redemption based thereon, and no authority has been cited, so holding. Authorities have been cited holding that one in possession as successor in title to the mortgagor, whose duty it is to pay the taxes, could not neglect the duty and defeat the mortgage by acquiring a

tax title; but as we have said, they do not apply to this case.

Woods rested his claim of adverse possession upon the tax deed. When that was pronounced void, he claimed the right to redemption and reimbursement, which the parties agreed was of the value of $939.58. The judgment will be affirmed.

*Affirmed.*

Chief JUSTICE GABBERT and Mr. JUSTICE SCOTT concur.

Decided February 1, A. D. 1915. Rehearing denied April 5, A. D. 1915.